Todd BOHMER, Plaintiff,

v.

State of NEW YORK, City of New York, New York State Police, New York City Police Department, Queens County District Attorney, and each of their respective agents, officers, and employees, Wayne E. Bennett, individually and in his capacity as New York State Police Superintendent, Joseph F. Loszinski, individually and in his capacity as Chief Inspector of Internal Affairs, New York State Police, Glenn Valle, individually and in his capacity as Division Counsel, New York State Police; Colonel Arthur Hawker, individually and in his capacity as Colonel, New York State Police,

and Devin P. Bruen, individually and in his official capacity as Assistant Counsel, New York State Police, and John Does 1–100, the identity of whom presently remain unknown, Defendants.

No. 06 Civ. 11370(SCR).

United States District Court, S.D. New York.

Feb. 4, 2010.

may reach UBS Securities' statute of limitations argument.

For the reasons set forth in this opinion, the Court grants the State defendants' motion for judgment on the pleadings.

Thomas Martin Gambino, Law Office of Thomas M. Gambino & Associates PC, Poughkeepsie, NY, for Plaintiff.

Lee Alan Adlerstein, Office of New York State Attorney General, Douglas William Heim, Sarah Beth Evans, New York City Law Department, New York, NY, for Defendants.

## OPINION AND ORDER

STEPHEN C. ROBINSON, District Judge.

Todd Bohmer, a New York State Trooper, filed this action against the City of New York (the "City"), the New York City Police Department (the "NYPD"), the Queens County District Attorney (the "DA") (collectively, the "City defendants"), the State of New York (the "State"), the New York State Police (the "NYSP"), and numerous individuals employed by the NYSP (the "individual NYSP defendants") (collectively, the "State defendants"). Mr. Bohmer's Complaint asserts a plethora of claims, including conspiracy under 42 U.S.C. § 1983, unlawful search and seizure under the Fourth Amendment, and due process violations under the Fourteenth Amendment as well as numerous pendant New York state claims. Mr. Bohmer's Complaint is based on his allegations that the Queens DA and the NYPD conducted an unlawful wiretap of his conversations and that the NYSP and individual NYSP defendants subsequently used this allegedly unlawfully obtained evidence during a non-criminal disciplinary hearing. The State defendants have filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

In 2005, the NYSP and individual NYSP defendants brought non-criminal disciplinary proceeding against Mr. Bohmer, a New York State Trooper. Among the evidence used in the disciplinary proceeding were recorded conversations between Mr. Bohmer and Christopher Bruno. Bruno was the target of a court ordered eavesdropping warrant obtained by the Queens DA, and the complaint alleges that the City defendants were spearheading the wiretapping operation. Although Bruno was the target of a court ordered warrant, the Complaint alleges that the City defendants exceeded their authority under that warrant by continuing to listen to conversations between Bohmer and Bruno that were not criminal in nature. Furthermore, Plaintiff believes City and Queens County defendants have a policy or practice of exceeding the scope of eavesdropping search warrants when a law enforcement officer is a party to the monitored conversation despite not being the subject of the investigation.

The Complaint then alleges that State defendants used the illegally seized evidence and relied on it in prosecuting Plaintiffs during a disciplinary proceeding. Plaintiff asserts that State defendants knowingly used the illegally seized evidence and refused to disclose the existence of the evidence to Plaintiffs counsel. According to Plaintiff, the defendants participated in a conspiracy with one another to deprive Plaintiff of his constitutional rights through the unlawful search and seizure and by fabricating allegations of misconduct.

In State defendants' motion for judgment on the pleadings, they argue that they are protected by absolute immunity, that the issue is precluded by estoppel, and that Plaintiff fails to articulate a constitutional violation.

## II. Standards of Review

### i. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). The Court looks at whether the complaint has pled "enough facts to state a claim to relief that is plausible on its face." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929(2007)).

The Second Circuit has stressed that "where the complaint alleges a civil rights violation, we apply this standard with particular strictness." *Patel v. Searles,* 305 F.3d 130, 135 (2d Cir.2002) (citing *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994)). "A claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right." *Green v. Maraio,* 722 F.2d 1013, 1016 (2d Cir.1983).

In a Rule 12(c) motion for judgment on the pleadings, the Court is limited to consideration of the pleadings. If the motion includes material "outside of the pleadings" and that material is "not excluded by the court," the motion must be converted from a motion for judgment on the pleadings to one for summary judgment. *Sira v. Morton,* 380 F.3d 57, 66 (2d Cir.2004). The complaint is deemed to include any written instrument attached to it as an exhibit, *see* Fed.R.Civ.P. 10(c), materials incorporated in it by reference, and documents that, although not incorporated by reference, are "integral" to the complaint. *Sira,* 380 F.3d at 66; *see also Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001). A document is integral to the complaint where the complaint "relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153–(quoting *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam)).

Plaintiff did not attach any document to the Complaint, however the NYSP disciplinary hearing is referenced in ¶¶ 41, 43, 44, 46, 47, and 49. The Defendants have attached in support of their motion (a) the findings and recommendations of the hearing board; (b) the witness list and statement of charges presented to Plaintiff before the hearing; (c) acceptance of the Superintendent of the hearing board's findings and recommendations; and (d) excerpts from the transcript of the hearing. Even though these documents were not attached to the Complaint or explicitly incorporated by reference, the Court may consider them because they are integral to Plaintiffs claims. *Schnall v. Marine Midland Bank,* 225 F.3d 263, 266 (2d Cir. 2000). Furthermore, the Court may refuse to accept as true allegations in the Complaint that are contradicted by this record. *Barnum v. Millbrook Care Ltd.,* 850 F.Supp. 1227, 1232–33 (S.D.N.Y.1994), *aff'd* 43 F.3d 1458 (2d Cir.1994) (concerning a Rule 12(b)(6) motion).

Plaintiff also submitted twenty-one exhibits as part of its opposition to Defendant's motion. The Court declines to consider these documents because they are

not attached to the Complaint nor incorporated by reference therein. The Court also declines to convert this Rule 12(c) motion into a motion for summary judgment because the parties have not had the full benefit of discovery since discovery was stayed until the disposition of this motion. *See Colon v. BIC USA, Inc.,* 136 F.Supp.2d 196, 200–01 (S.D.N.Y.2000) (citing *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000)).

Therefore, the Court will not consider the information contained in Plaintiffs exhibits, including the factual allegation absent from the Complaint that State defendants were actually participants in the investigation that led to Bruno wiretap. As stated in the Complaint, Plaintiff only alleges that State defendants violated his rights by using the wiretap evidence in the disciplinary proceeding. Therefore, the Court does not consider any liability with respect to the State defendants for the wiretapping and strictly focuses on Slate defendants' liability vis-á-vis the disciplinary hearing.

## III. Discussion

Because the Complaint only alleges that State defendants violated Plaintiffs rights by conducting a NYSP disciplinary proceeding using the wiretap evidence, the Court will only address this issue. It is noted that the Exhibits attached to Plaintiffs Memorandum of Law in Opposition to defendants' Rule 12(c) motion suggest that State defendants were actually participants in the wiretap investigation itself. However, since this was not alleged in the Complaint and Plaintiff did not seek leave to amend his Complaint after this initial discovery was completed, the Court limits itself to the liability of the State defendants for their actions during the disciplinary proceedings only.

■ Plaintiff in his opposition also claims that his allegations of a § 1983 conspiracy require the Court to evaluate the liability of State defendants with regard to the wiretapping as well. The Court rejects this argument because in order to survive a motion to dismiss, a § 1983 conspiracy pleading must allege more than a "merely conclusory allegation" of a conspiracy. *Ciambriello v. Co. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002); *see also Nat'l Congress for Puerto Rican Rights v. City of New York,* 75 F.Supp.2d 154, 168 (S.D.N.Y.1999) ("[A]n essential element in a claim of conspiracy to deprive a plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. Without such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy.") Plaintiff's Complaint fails this standard, and therefore any claim that State defendants are liable for the allegedly unlawful wiretapping pursuant to this conspiracy must be dismissed.

### a. Sovereign Immunity

■ Under the Eleventh Amendment, a federal court lacks jurisdiction over suits for damages brought against the state by one of its citizens absent the state's consent to the suit or an express statutory waiver of immunity. *See Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, New York State is dismissed from the suit.

■ The Eleventh Amendment also bars suits against state officials and state agencies if the state is the real party in interest, regardless of whether the slate is named as a party to the action. *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347. When a state official or agency is named as a party to the litigation, the Court must determine whether the action is in reality a suit against the state and will look at the na-

ture of the relationship between the slate and the agency to see if the agency is in fact an arm of the state. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

Other district courts in New York have found that the New York State Police (N.Y.SP) is protected by the Eleventh Amendment because the NYSP is an arm of the stale. *See. e.g. Simons v. New York,* 472 F.Supp.2d 253, 260–61 (N.D.N.Y. 2007); *Morrongiello v. Ashcroft,* 2004 WL 112944. at *2 (S.D.N.Y. Jan. 22, 2004) (analogizing New York Stale Police to another New York agency in *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities,* 64 F.3d 810, 815 (2d Cir.1995)). In addition, a suit for damages against State defendants in their official capacity is in effect a suit against the state because the judgment would be satisfied using state funds. *Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988).

■ The Court rejects Plaintiff's argument that he should be able to sue the State defendants in their official capacity for injunctive relief. In order for a request for injunctive relief to overcome Eleventh Amendment protection for state officials, Plaintiff must plead that there is an ongoing violation of federal law. *See Seminole Tribe v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Plaintiff fails to plead any facts that suggest to the Court that NYSP and its officials have an ongoing pattern of the conduct described in the Complaint. Furthermore, the Plaintiff did not assert that the alleged violation of his own constitutional rights is likely to recur such that an injunction would afford him prospective relief from illegal stale action. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 107–08, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Therefore, NYSP and the State

defendants sued in their official capacity are also dismissed from the action.

### b. Absolute Immunity

#### i. Standard

■ State defendants claim that absolutely immunity protects them from any liability stemming from conducting the disciplinary hearing. Courts have recognized two forms of immunity under § 1983: absolute and qualified. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed,* 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). However, the courts have acknowledged that some officials perform special functions that warrant absolute immunity from damages, liability, based on common-law forms of immunity in place before the enactment of § 1983. *Buckley,* 509 U.S. at 268, 113 S.Ct. 2606. Absolute immunity is accorded to judges and prosecutors functioning in their individual capacities and, under certain circumstances, is also extended to officials of government agencies "performing certain functions analogous to those of a prosecutor" or judge. *Butz v. Economou,* 438 U.S. 478, 511–12, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895(1978); *see also Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994).

■■ Absolute immunity is determined by the nature of the function performed, rather than the title or identity of the official. *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). In deciding whether an official's conduct in an administrative proceeding should be accorded absolute immunity, the Court employs a "functional approach" to determine whether the procedures used by the agency are sufficiently similar to the judicial

process to warrant a grant of immunity, *Cleavinger v. Saxner,* 474 U.S. 193, 201–02, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), and then look to whether the actions taken by the official are "functionally comparable" to that of a judge or prosecutor, *Butz,* 438 U.S. at 513, 98 S.Ct. 2894. Government actors who seek absolute immunity "bear the burden of showing that public policy requires an exemption of that scope." *Butz,* 438 U.S. at 506, 98 S.Ct. 2894. Once a court determines that an official was Functioning in a core judicial or prosecutorial capacity, absolute immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger,* 474 U.S. at 199–200, 106 S.Ct. 496.

### ii. NYSP Disciplinary Hearing

■ In deciding whether an actor is entitled to absolute immunity on the basis that his role is analogous to that of a prosecutor or judge, or integrally related to a judicial proceeding, the Court evaluates the challenged proceeding in light of the "characteristics of the judicial process" as enumerated in *Butz v. Economou.* *See Mitchell v. Fishbein,* 377 F.3d 157, 172 (2d Cir.2004) (citing *DiBlasio v. Novello,* 344 F.3d 292, 297–98 (2d Cir.2003)). The *Butz* factors are:

(1) The need to assure that the individual can perform his functions without harassment or intimidation;

(2) The presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

(3) Insulation from political influence;

(4) The importance of precedent;

(5) The adversary nature of the process; and

(6) The correctability of error upon appeal.

*Cleavinger v. Saxner,* 474 U.S. 193, 201–02, 106 S.Ct. 496, 88 L.Ed.2d 507 (citing *Butz,* 438 U.S. at 512–14, 98 S.Ct. 2894).

State defendants conducted the disciplinary hearing pursuant to procedures set out in 9 NYCRR §§ 479.1–479.14. These procedures are quite detailed, from the initial report of an accusation against an officer to the rights of the accused at the disciplinary hearing. Specifically, any accusation against a NYSP officer must be documented, reported to the chief inspector, and thoroughly investigated. 9 NYCRR § 479.1. There is also a prepared written report that includes "written statements of the complainant ... written statements of witnesses interviewed, and a full and complete written statement of the accused member." *Id.*

Throughout the disciplinary proceedings, the accused officer has a right to be represented. *See, e.g.,* 9 NYCRR § 479.2(c)(1). The matter may be disposed of by the troop or detail commander, adjudicated through an informal inquiry by the commander, or sent to the superintendent for a formal hearing. 9 NYCRR § 479.2. The superintendent either disposes of the matter, or makes findings and recommendations as to the guilt of the accused. 9 NYCRR § 479.3. If the accused does not accept the superintendent's findings, he has the right to insist on a formal hearing before the hearing board. 9 NYCRR § 479.4. If he elects for a formal hearing, charges are prepared and served on the accused member. The board is not bound by the superintendent's findings, and must make an independent determination. 9 NYCRR § 479.4(b).

The rules and regulations specify that the accused member must be informed in writing of:

(a) the charge, indicating completely the law, or the rule, regulation, instruction or order which is alleged to have been

violated; (b) specifications setting out the information and/or facts substantiating the charge; (c) the fact that disciplinary action may result in separation from the division ... or in reduction in permanent rank; and (d) the names and addresses of the persons preferring the charges or who are witnesses in the matter.

9 NYCRR § 479.5.

The hearing is conducted by a hearing board of three commissioned officers, one of which is chosen by union representatives. 9 NYCRR § 479.7(a)-(c). The accused member has a right to representation at the hearing. 9 NYCRR § 479.8(a). During the hearing, the accused has a right to confront and cross-examine witnesses, gather evidence, and call his own witnesses necessary to his defense. 9 NYCRR § 479.8(e)-(f). A record is made of all testimony. The hearing board's decision is forwarded to the superintendent for approval, and the accused may choose to send the testimony transcript along with it. Should the accused decide to appeal the superintendent's decision pursuant to Article 78 of the Civil Practice Law and Rules (CPLR), the transcript is available to the accused. 9 NYCRR § 479.8(h)-(i).

Applying the *Butz* factors to these procedures, the Court finds that the NYSP disciplinary hearing is quasi-judicial and warrants absolute immunity for those officers integrally related to the proceeding. First, the Court acknowledges that it is very important for NYSP to be able to conduct disciplinary hearings free from harassment or intimidation because of the public's interest in having police officers who follow the law and behave according to NYSP codes of conduct. Second, the rules and regulations governing these pro-

ceedings establish an adversarial process in which there are many safeguards to protect the accused officer from abuse. Many of them are analogous to the safeguards in judicial proceedings, such as the right to a formal hearing, the right to representation, the right to have all charges and witnesses against the accused written and served prior to the proceeding, the right to confront and cross-examine witnesses, the right to present a defense, and the right to appeal. Third, any errors in the proceeding can be corrected by appealing the superintendent's decision in state court, pursuant to Article 78 of CPLR.[1]

■ The Court then examines the functions of the specific defendants: NYSP Superintendent Wayne Bennett, Division Counsel for the NYSP Glenn Valle, Assistant Counsel for the NYSP Kevin Bruen, Chief Inspector of Internal Affairs Joseph Loszinski, and Colonel Arthur Hawker. As stated above, officials acting in the role of a judge or prosecutor of an administrative proceeding are entitled to absolute immunity for the same reasons that judges and prosecutors in judicial proceedings are entitled to absolute immunity. *Butz*, 438 U.S. at 508–517, 98 S.Ct. 2894, *see also Verbeek v. Teller*, 158 F.Supp.2d 267, 280 (E.D.N.Y.2001). Therefore, the individual defendants who have served in these roles are entitled to absolute immunity.

The Complaint does not clearly describe the roles of each of the State defendants, except to give their titles. The Court must therefore glean the role of each defendant from their job title, as well as the procedures as laid out in 9 NYCPRR § 479.1–14. Superintendent Bennett was responsible for signing the charge and ac-

---

1. The Court acknowledges that there is not enough information to evaluate whether precedent is used in such hearings or whether the hearings are insulated from political influ-

ence. However, the lack of information on these two factors alone does not outweigh the other factors, which strongly support finding that the hearing is quasi-judicial.

cepting the hearing board's findings and recommendations. In this capacity, he was acting in a prosecutorial role by initiating the proceedings and a judicial role by accepting the hearing board's decision at the end of the adjudication. Thus, Bennett is entitled to absolute immunity and dismissed from the case. *See DiBlasio v. Novello,* 344 F.3d 292, 297 (2d Cir., 2003).

■ Division Counsel Glenn Valle and Assistant Counsel Kevin Bruen represented the NYSP during the proceeding. While the Complaint does not specify what they did during the hearing, the Court infers from the rules and regulations governing the hearing that NYSP's counsel was responsible for presenting evidence, bringing forward witnesses, and cross-examining the accused's witnesses. Because Valle and Bruen were acting in a prosecutorial role, they too are entitled to absolute immunity and dismissed from the action. *See Spear v. Town of West Hartford,* 954 F.2d 63, 66 (2d Cir.1992); *Verbeek,* 158 F.Supp.2d at 282.

The Complaint also gives no information about Chief Inspector of Internal Affairs Joseph Loszinski or Colonel Arthur Hawker's role in the proceeding. The Court cannot infer their role from the rules and regulations or from the hearing board's record. Therefore, the Court dismisses the claims against Loszinski and Hawker because the Plaintiff fails to allege sufficient facts to support a claim against them. *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). But, the Court also-acknowledges that given more-information about their role, they would likely be accorded absolute immunity for either prosecutorial activities or for being integrally related to the judicial process. *See Cleavinger,* 474 U.S. at 200, 106 S.Ct. 496.

Because the Court has found that the Stale defendants Bennett, Valle, and Bruen, are entitled to absolute immunity,

it declines to address the other grounds for dismissal defendants have argued, including estoppel and failure to assert a constitutional violation. The Court also dismisses all other federal claims against defendants because of their absolute immunity to liability for their conduct during the proceeding. All federal claims are dismissed against defendants Loszinski and Hawker for failure to state a claim.

### c. Pendent State Claims

Because jurisdiction in this case is not premised on the diversity of the parties under 28 U.S.C. § 1332, *see* Compl. ¶ 1, the Court only has subject matter jurisdiction over Plaintiffs remaining state law claims if it chooses to exercise supplemental jurisdiction under 28 U.S.C. § 1367. While the Court may exercise supplemental jurisdiction when the state law claims arise out of the same nucleus of facts that give rise to the federal claims, this power is discretionary. *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In this case, supplemental jurisdiction is disfavored as a matter of judicial efficiency and comity. As both the Supreme Court and the Second Circuit have noted, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir.1998) (quoting *United Mine Workers,* 383 U.S. at 726, 86 S.Ct. 1130 (1966)). Even though the Court may still choose to exercise supplemental jurisdiction, the "usual case 'will point toward declining-jurisdiction over the remaining state-law claims.'" *Murray v. Visiting Nurse Services,* 528 F.Supp.2d 257, 280 (S.D.N.Y.2007) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining stale law claims against the Stale

defendants. Plaintiff will not suffer prejudice as a result of being required to bring his state law claims in state court because New York law allows a plaintiff to recommence a dismissed suit, initially timely filed, within six months of dismissal without regards to the statute of limitations. *See* N.Y. CPLR § 205; *Mayer v. Oil Field Systems Corp.*, 620 F.Supp. 76, 77 (S.D.N.Y.1985).

## IV. Conclusion

The Court dismisses all claims against New York State, NYSP, and the State defendants sued in their official capacity under the doctrine of sovereign immunity. The Court finds that State defendants sued in their individual capacity, Bennett, Valle, and Bruen, are entitled to absolute immunity for their involvement in the NYSP disciplinary hearing. The hearing satisfied the *Butz* factors and thus has the characteristics of a judicial proceeding that warrant absolute immunity. These defendants also served prosecutorial and judicial functions in the hearing that merited absolute immunity. Therefore, all federal claims against them are dismissed without prejudice. Claims against State defendants Loszinski and Hawker are dismissed without prejudice for failure to plead facts sufficient to support a claim against them. The Court declines to exercise supplement jurisdiction over the pendent state law claims as to all State defendants. All stale claims are dismissed without prejudice. The Clerk of the Court is directed to term docket 16.

It is So Ordered.